Robert S. Wagner, OSB #84411
David C. Lewis, OSB #95334
MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, OR 97210-3408
Telephone: (503) 299-6116
Facsimile: (503) 299-6106
E-mail: rsw@miller-wagner.com
          dcl@miller-wagner.com

          Of Attorneys for Defendants


### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MARY MACQUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV07-919 MO |
| | ) | |
| v. | ) | DEFENDANTS' TRIAL MEMORANDUM |
| | ) | |
| CITY OF GRESHAM, JEFF DURBIN AND | ) | |
| TED VAN BEEK, | ) | |
| | ) | |
| Defendants. | ) | |

### CASE BACKGROUND

This is an excess force lawsuit which focuses on defendant City of Gresham Police

Officer Jeffrey Durbin's physical contact with plaintiff to gain control of her, arrest her,

and prevent her from interfering with the arrest of another person.  Gresham Police

Officer Ted Van Beek is also named as a defendant for his use of force, but plaintiff's

counsel has stated the intent to dismiss Officer Van Beek, although that has yet to occur.

Arising out of the use of force, plaintiff alleges two civil rights claims.  Her first

claim is against the defendant officers under § 1983 for excessive force during her

handcuffing.  She is not contesting the lawfulness of her arrest, rather only the force

used against her during the arrest.  Her second claim is against the City of Gresham, also

brought under § 1983 for an unconstitutional policy regarding the use of tasers and the

alleged failure to supervise or train Officer Durbin in the use of tasers and the use of force.

## FACTUAL BACKGROUND

Defendants Durbin and Van Beek are Gresham police officers who were conducting patrols of transient camps along the Springwater Trail in response to numerous citizen complaints of unruly, threatening and criminal behavior of persons camping along the trail corridor. On April 7, 2006, at about 7:00 a.m., they were investigating an area known as "the swamp," a frequent unlawful homeless camp.

As Officers Durbin and Van Beek entered the campsite, they found multiple tents which appeared to be occupied.

The officers repeatedly announced their presence and ordered people out of the tents. The occupant of the tent in front of Officer Van Beek refused to comply. Greg Schultz, however, came out of the tent directly in front of Officer Durbin. He was angry, abusive, appeared to be under the influence of methamphetamine, and physically challenged Officer Durbin.[1] Officer Durbin told him to gather his belongings and leave.

When Schultz refused, he was told he was under arrest and to place his hands behind his back. Schultz physically resisted that arrest.[2] As the officers got Schultz in handcuffs and seated on a log, plaintiff Mary MacQuire rushed out of Schultz' tent screaming obscenities. She was accompanied by a pitbull and also appeared to be under the influence of methamphetamine. She charged towards the officers in an apparent attempt to interfere in the arrest of Gregory Schultz.

MacQuire was told she was under arrest and ordered to put her hands behind her back. She, too, refused and became physically combative and verbally assaultive. Both

---

[1]Hypodermic needles were later found next to Schultz' tent and he had fresh needle marks on his arm.

[2]He was subsequently charged with and convicted of Resisting Arrest.

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

Officers Durbin and Van Beek were attempting to get her arms behind her back when Schultz got up and charged the officers.

Officer Van Beek was forced to disengage from MacQuire to deal with Schultz, leaving Officer Durbin alone with MacQuire.

Officer Van Beek was now engaged in a violent struggle with Schultz, while Officer Durbin attempted to get a wildly combative MacQuire into handcuffs. Officer Durbin took plaintiff to the ground. He had a hold of her left arm and hand but her right arm was tucked underneath her body. He repeatedly told MacQuire to stop resisting and to show him her hands. She refused repeatedly. He warned her that he would tase her, but she still refused and dared him to do so.

Officer Durbin removed the probes from the taser, touched it to the back of her leg and pulled the trigger. She still refused to remove her right arm from underneath her body, so he activated the Taser a second time. Again, she continued to violently struggle in an attempt to get out from under him. So he tased her a third time. After the third time, she pulled her right arm out from underneath her body, swung it back hitting Officer Durbin in the face, and then tucked it back underneath her body. Officer Durbin was forced to use the Taser a fourth time, after which he was finally able to get her right arm out and in handcuffs.

Meanwhile, backup officers arrived and dealt with the other persons in the other tents, including Dion Hickman who was the occupant of the tent in front of Officer Van Beek. Plaintiff was transported to the Gresham Police Station where she was placed in a holding cell and eventually lodged in the Multnomah County Detention Center.

///

///

///

///

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

MEMORANDUM OF LAW

1.    <u>Fourth Amendment Excessive Force Claim</u>.

It is well settled that an excessive force complaint under § 1983 is analyzed

according to Fourth Amendment standards:

> [A]ll claims that law enforcement officers have used
> excessive force--deadly or not--in the course of an arrest,
> investigatory stop, or other "seizure" of a free citizen should
> be analyzed under the Fourth Amendment and its
> "reasonableness" standard . . . .

<u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (emphasis in original).  The inquiry is

"whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to their underlying intent or

motivation." <u>Id.</u> at 397.  The <u>Graham</u> Court observed:

> The "reasonableness" of a particular use of force must be
> judged from the perspective of a reasonable officer <u>on the
> scene</u>, rather than with the 20/20 vision of hindsight. . . .
> With respect to a claim of excessive force, the same standard
> of <u>reasonableness at the moment</u> applies:  "Not every push or
> shove, even if it may later seem unnecessary in the peace of
> the judge's chambers," violates the Fourth Amendment.  The
> calculus of reasonableness must embody the allowance for
> the fact that police officers are <u>often forced to make split-
> second judgments</u>--in circumstances that are tense, uncertain,
> and rapidly evolving--about the amount of force that is
> necessary in a particular situation.

490 U.S. at 396-97 (emphasis added; citations omitted).  In other words, the

reasonableness of a police officer's actions must be viewed from a reasonable officer's

point of view at the very moment he is forced to act.

It is well settled the "the right to make an arrest or investigatory stop necessarily

carries with it the right to use some degree of physical coercion or threat thereof to effect

it." <u>Graham</u>, 490 U.S. at 396.  Police officers are "authorized to take such steps as [are]

reasonably necessary to protect their personal safety and to maintain the status quo."

<u>United States v. Hensley</u>, 469 U.S. 221, 235 (1985).

Page 4 -      DEFENDANTS' TRIAL MEMORANDUM

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

The Ninth Circuit has further clarified the scope of the "reasonableness" inquiry regarding use of force.  Police officers are <u>not</u> required use the least intrusive alternatives; they need only act within the range of reasonable conduct.  <u>Scott v. Henrich</u>, 39 F.3d 912, 915 (9th Cir. 1994) (citing <u>Illinois v. Lafayette</u>, 462 U.S. 640, 647 (1983); <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 556-57 n.12 (1976)), <u>cert. denied</u>, 515 U.S. 1159 (1994); <u>Forrester v City of San Diego</u>, 25 F.3d 804, 807-08 (9th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1152 (1995).

> Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment.  In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission.  Instead, he would need to ascertain to least intrusive alternative (an inherently subjective determination) and choose that option and that option only.  Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves.  It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment.

<u>Scott</u>, 39 F.3d at 915.  "Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue."  <u>Forrester</u>, 25 F.3d at 808.

Further, under Oregon law, a police officer is justified in using physical force to the extent reasonably necessary to make an arrest or to protect the officer or others from the use or imminent use of physical force while making or attempting to make an arrest.  O.R.S. 161.235.

2.    <u>Municipal Liability Claim.</u>

Plaintiff's municipal liability claim as alleged in her Complaint was that the City had failed to train, supervise and discipline its officers with respect to the use of excessive force and taser shock.  (Compl. ¶ 23.)  No where in her Complaint was there alleged any claim of an unconstitutional <u>policy</u> with regard to the use of taser in general.

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

That claim appeared for the first time in the Pretrial Order after discovery had closed. Her proposed taser policy claim in untimely and should be stricken.

If that claim is allowed to go forward, as a threshold matter plaintiff must first prove that Officer Durbin violated her constitutional rights. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Palmerin v. City of Riverside, 794 F.2d 1409, 1414-15 (9th Cir. 1986). If not, then she cannot state a civil rights claim against the City of Gresham even if its supervision or training was somehow constitutionally deficient. Id.

However, if plaintiff manages to prove a constitutional violation by Officer Durbin, she must then prove that it was inflicted pursuant to an official policy or custom of defendant City in order for the City to liable, since respondeat superior liability does not exist under § 1983. Monell v. New York City Department of Social Services, 436 U.S. 658, 691 (1978); see also Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) ("a municipality may not be held liable under § 1983 solely because it employs a tort feasor"). The practices of the government officials must be "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691. Proof of random acts or isolated events are insufficient to establish a custom. Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989). Similarly, a single incident of unconstitutional conduct by a municipal employee is clearly insufficient to prove the existence of a municipal policy. Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).

Moreover, "it is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality." Brown, 520 U.S. at 404. Plaintiff must also show that the municipal policy was the "moving force" behind the constitutional deprivation by demonstrating that the municipal action was taken with "deliberate indifference" to known or plainly obvious consequences and directly caused the deprivation of constitutional rights. Id. at 404-408. Deliberate indifference is a

Page 6 -    DEFENDANTS' TRIAL MEMORANDUM

"stringent standard of fault" requiring proof that a municipal policymaker disregarded a known or obvious consequence of its action. Id. at 410.

In the context of a municipal failure to supervise or train claim, "a constitutional violation may arise from training or supervision where the training or supervision is sufficiently inadequate as to constitute "deliberate indifference" to the rights of persons with whom the police come into contact." Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378, 388-91 (1989)). The standard for a failure to supervise claim and a failure to train claim is the same. Davis, 869 F.2d at 1235; Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

It is legally insufficient that an injury could have been avoided if an officer had had better or more supervision or training. City of Canton, 489 U.S. at 391. "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." Id. Instead, plaintiff must "establish a program-wide inadequacy in training [or supervision]." Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994).

Plaintiff will be unable to prove a Monell violation against the City of Gresham under any theory. She has identified no witnesses or evidence that the City's policies, training or supervision were deficient in any way, much less constitutionally

///

///

///

///

///

///

///

Page 7 -      DEFENDANTS' TRIAL MEMORANDUM

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

deficient, or that, at best, her incident was anything more than a random or isolated event.

DATED this 31st day of March, 2008.

MILLER & WAGNER LLP

By: _____
Robert S. Wagner, OSB #84411
David C. Lewis, OSB #95334
Of Attorneys for Defendants
(503) 299-6116

Trial Attorney:
Robert S. Wagner, OSB #84411

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANTS' TRIAL

MEMORANDUM, on the following party at the following address by notice of electronic

filing using the CM/ECF system:

Edward Johnson
Monica Goracke
Spencer M. Neal
Oregon Law Center
921 S.W. Washington, #516
Portland, Oregon 97205
(503) 473-8310
edjohnsonolc@yahoo.com
mgorackeolc@yahoo.com
Spencerneal@justice.com
        Of Attorneys for Plaintiff

DATED this 31st day of March, 2008.

Robert S. Wagner, OSB #84411
David C. Lewis, OSB #95334
(503) 299-6116

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116